# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TYEASHA JOHNSON, on behalf of herself and others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 4:20-CV-00574-SPM |
| HIMAGINE SOLUTIONS, INC., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Unopposed Motion to Approve Settlement of FLSA Collective Action. (Doc. 39). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 17). For the following reasons, the motion will be granted.

**I.   BACKGROUND**

On April 23, 2020, Plaintiff Tyeasha Johnson filed a Collective Action Complaint under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. (the "FLSA"), on behalf of herself and all current and former medical billing Remote Coders ("Coders") who work and/or worked for Himagine Solutions, inc. ("Himagine") within the United States. Plaintiff alleged that Himagine violated the FLSA by failing to pay Plaintiff and others similarly situated the required overtime compensation. (Doc. 1). Seven other individuals who previously worked for Himagine (the "opt-ins") also consented to join this action as party plaintiffs. (Docs. 18, 26, 28, 29). On May 15, 2020, Plaintiff filed her First Amended Collective Action Complaint, in which she limited the collective action to "all current and former remote Coders . . . who work and/or

worked for Himagine within the United States outside of the State of California" (the "Collective Members"). 1st Am. Compl. ¶ 1.[1]

Plaintiff and the opt-ins (collectively, "Plaintiffs") alleged, *inter alia,* that Himagine had a companywide practice of failing to accurately track or record the actual hours worked by its Coders; that Himagine's performance quotas and other daily tasks assigned required Coders to work more than 40 hours per week; that Himagine precluded Coders from reporting more than 40 hours per week unless they were given either an express mandate or authorization to work more than 40 hours; and that Himagine's management was at all times aware that Coders regularly worked overtime without proper compensation. *Id.* Plaintiffs sought unpaid wages for unpaid hours worked in excess of 40 in a workweek, statutory penalties, liquidated damages, and reasonable attorney's fees and costs. Himagine disputes Plaintiffs' allegations, arguing that its policies and practices required the accurate reporting of hours by all Coders; that time records on which Coder pay is based are accurate, and that it at all times properly paid its Coders for hours worked. The parties engaged in written discovery, some depositions, and two mediation conferences. Following the second mediation conference, the parties reached a settlement agreement.

The terms of the parties' settlement agreement are fully set forth in Plaintiffs' briefs and exhibits and will not be fully repeated here. Briefly, under the proposed settlement, Himagine will create a common settlement fund in the maximum amount of $965,000.00. Each Collective Member's Settlement Share will be paid from the Net Settlement Amount, which is the amount of the settlement fund remaining after deductions for (a) the Class Representative Payment ($5,000);

---

[1] Another plaintiff filed a similar action in state court in California, and the claims of California Coders are being resolved in that lawsuit.

(b) the Service Payment to opt-in plaintiffs ($5,500 in total); (c) the Class Counsel Fees and Expenses Payment ($321,666.67 in fees and $17,220.00 for expenses); and (d) the Settlement Administrator's fees and expenses (an amount projected not to exceed $30,000).

The Settlement Administrator will calculate each Collective Member's Settlement Share based on the following formula:

> Each Collective Member will receive a payment equal to the Net Settlement Amount times the ratio of (i) the number of workweeks during which a Collective Action Member performed work for Himagine in a position covered by the Settlement during the Covered Period ("Covered Workweeks") to (ii) the total number of Covered Workweeks worked by all Collective Members.

Ex. 1, at § III.B.1. Plaintiff's counsel estimates that the settlement represents payment of approximately $22.25 per week (more than half an hour per week in overtime wages) to each Coder for each week in which the Coder reported working 40 hours or more and thus may have done off-the-clock work for which they were not paid overtime.

Collective Members will be sent a notice that will inform them of the general terms of the settlement, their rights and obligations should they choose to participate in the settlement, the number of workweeks used to determine their specific share of the settlement amount, the estimated dollar amount of their settlement share, and instructions on how to dispute or correct the information used to calculate their settlement amount. After a period for resolving disputes or corrections, the Settlement Administrator will distribute checks for the Settlement Shares to the Collective Members. Each Collective Member will then have 180 days to decide whether to participate in the settlement by cashing the check; by doing so, the Collective Member will agree to opt in to the action and to release Himagine from all claims, as described in the Settlement Agreement. A Collective Member who does not cash the check will not release any claims. At the conclusion of the 180-day period, uncashed funds will be returned to Himagine.

## II. DISCUSSION

Plaintiffs request that the Court approve all aspects of the parties' settlement.[2] Specifically, Plaintiffs request that the Court (A) certify the case for settlement purposes as an FLSA collective action; (B) approve the settlement as a fair and equitable resolution of a bona fide dispute; (C) approve the proposed class representative and service payments are reasonable; (D) approve the parties' proposed notice and plan for distribution and settlement administration; (E) approve the parties' negotiated agreement that plaintiffs' counsel receive as a reasonable attorney's fee one-third of the maximum settlement fund, plus reimbursement of stipulated litigation costs. The Court will address each of these issues in turn.

### A. Certification of FLSA Collective Action

Under the FLSA, an employer may not subject non-exempt employees to a workweek in excess of 40 hours unless the employee is compensated for his or her overtime with additional pay of at least one and one-half times his or her regular hourly wage. 29 U.S.C. § 207(a)(1). Any employer who violates this restriction "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. 216(b). A collective action under the FLSA to recover overtime compensation and liquidated damages may be maintained "by any one or more employees for and

---

[2] The Court notes that it is not entirely clear whether court approval of an FLSA collective action settlement is necessary. *See, e.g., Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018) (recognizing "an apparent circuit split as to whether private settlements relating to FLSA claims require district court review" but declining to address the issue); *Johnson v. Thomson Reuters*, No. 18-CV-0070 (PJS/HB), 2019 WL 1254565, at *2 n.1 (D. Minn. March 19, 2019) (approving FLSA settlement but noting, "It is not entirely clear whether court approval is necessary."). However, to promote certainty for the parties, district courts generally review such settlements. *See, e.g., King v. Raineri Construction*, No. 4:14-CV-1828-CEJ, 2015 WL 631253, at *2 (E.D. Mo. Feb. 12, 2015). ("[B]ecause declining to review the proposed settlement agreement would leave the parties in an uncertain position, the Court will review the settlement's FLSA-related terms for fairness."). The Court will follow this approach and review the settlement for fairness.

in behalf of himself or themselves and other employees similarly situated." *Id.* "Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an opt-in basis, requiring employees to provide their consent in writing to join the action." *Brown v. Reddy ICE Corporation*, No. 4:14-CV-1786-RLW, 2016 WL 2930933, at *1 (E.D. Mo. May 19, 2016) (citing 29 U.S.C. § 216(b) & *Schmaltz v. O'Reilly Auto. Stores, Inc.*, No. 4:12-CV-1056-JAR, 2013 WL 943752, at *2 (E.D. Mo. March 11, 2013)).

District courts within the Eighth Circuit use a two-step analysis to determine whether employees are "similarly situated" for purposes of an FLSA collective action. *Brown*, 2016 WL 2930933, at *1 (citing *Littlefield v. Dealer Warranty Servs.*, LLC, 679 F. Supp. 2d 1014, 1016 (E.D. Mo. 2010)). *See also Shackleford v. Cargill Meat Solutions Corp.*, No. 12-CV-4065-FJG, 2013 WL 209052, at *1 (W.D. Mo. Jan. 17, 2013). "The first step is the 'notice stage,' in which plaintiffs seek early conditional class certification and notify potential class members of the case." *Brown*, 2016 WL 2930933, at *1 (quoting *Bilskey v. Bluff City Ice, Inc.*, No. 1:13-CV-62-SNLJ, 2014 WL 320568, at *1 (E.D. Mo. Jan. 29, 2014)). "The plaintiffs' burden at this stage is not an onerous one; instead, 'conditional certification at the notice stage requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Brow*n, 2016 WL 2930933, at *1 (quoting *Littlefield*, 679 F. Supp. 2d at 1016))

"The second step is the 'merits stage' and occurs when the defendant moves to decertify the class, typically after the close of discovery." *Brown*, 2016 WL 2930933, at *2 (citing *Bilskey*, 2014 WL 230568, at *2). At the merits stage, the Court "makes a factual determination on the similarly situated question." *Brown*, 2016 WL 2930933, at *2. *See also Shackleford*, 2013 WL 209052, at *2. "In deciding whether the plaintiffs are similarly situated, a court considers several

factors, including (1) the extent and consequences of disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) other fairness and procedural considerations." *Brown*, 2016 WL 2930933, at *2 (quoting *Brennan v. Qwest Commc'ns Int'l*, Inc., No. 07-2024 ADM/JSM, 2009 1586721, at *3 (D. Minn. June 4, 2009)). Where, as here, the plaintiffs did not move for conditional certification before they agreed to settle the case, the Court may consider both steps at the same time. *See, e.g.*, *Shackleford*, 2013 WL 209052, at *2.

The Court finds that the lenient standard of the first step is easily satisfied here. The First Amended Complaint clearly contains substantial allegations that the putative class members were together the victims of a single decision, policy, or plan—Himagine's policy of requiring its Coders to work more than 40 hours a week while precluding them from reporting all of their hours worked, resulting in Coders regularly working overtime without proper compensation.

Applying the stricter standard of the second step in light of the relevant factors, the Court finds the members of the proposed collective action are similarly situated. Regarding the first factor, the Court finds that the factual circumstances and employment settings of the various members are very similar. According to evidence submitted by Plaintiffs, all of the members work remotely, performing similar work—coding medical records for billing purposes; all were subject to production quotas; all were responsible for accurately reporting their hours worked; and all were subject to Himagine's timekeeping and reporting policies. The members who have thus far opted in allege that Himagine limited them to reporting only 40 hours per week, even if they worked more than 40 hours, unless they expressly received permission to report more hours or were required to work overtime., and that allege that Himagine managers were, or should have been, aware, that the members worked more than 40 hours per week without overtime compensation.

These commonalities weigh in favor of finding the members similarly situated. *See, e.g.*, *Brown*, 2016 WL 2930933, at *1-*2 (certifying classes in an FLSA collective action where the class members "were subject to the same uniform policy or practice alleged to be unlawful under the FLSA, thus meeting the 'similarly situated' requirement for class certification) (citing *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007), & *Greenwald v. Phillips Home Furnishings, Inc.*, No. 4:08CV1128 CDP, 2009 WL 259744, at *6-*7 (E.D. Mo. Feb. 3, 2009)).

The second factor also weighs in favor of certification, though somewhat less so. Some of Himagine's defenses are largely common to the various collective action members: Himagine argues that its policies clearly forbid working off-the-clock and require Coders to accurately report all hours worked; that Coders were paid for all hours worked, including overtime; and that its management limited Coders to reporting only 40 hours per week or were otherwise aware that coders were working more hours than submitted on their time sheets. It is certainly possible, however, that Himagine could assert more individualized defenses based on varying directions given by different managers or varying procedures set forth in different contracts with Himagine clients.

Finally, fairness and procedural circumstances support certifying a collective action because a collective action will permit several hundred employees to effectively pool their resources for litigation. *See, e.g.*, *Shackleford*, 2013 WL 209052, at *2 (certifying collective action for settlement purposes because, *inter alia*, "fairness and procedural considerations, including the number of plaintiffs and the effectiveness of allowing them to pool their resources for litigation, also weigh in favor of collective treatment") (quoting *Valladon v. City of Oakland*, No. C 06-07478SI, 2009 WL 2591346 (N.D. Cal. Aug. 21, 2009)).

After weighing all the above factors, the Court finds that this case should be finally certified as a collective action under the FLSA for settlement purposes.

### B. Whether the Settlement Represents a Fair and Equitable Resolution of a Bona Fide Dispute

Before approving a settlement agreement in a case brought under § 216(b), the Court must determine that (1) the litigation involves a bona fide dispute, and (2) the proposed settlement is fair and equitable to all parties. *Brown v. Reddy Ice Corp.*, No. 4:14-CV-1786-RLW, 2016 WL 2930933, at *3 (E.D. Mo. May 19, 2016); *see also King*, 2015 WL 631253, at *2.

The Court first considers whether this litigation involves a bona fide dispute. This requirement is satisfied only where a settlement "reflects a reasonable compromise over issues actually in dispute, since employees may not waive their entitlement to minimum wage and overtime pay under FLSA." *King*, 2015 WL 631253, at *2 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946), & *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). *See also Johnson*, 2019 WL 1254565, at *2 ("A 'bona fide dispute' exists when there are 'issues, such as FLSA coverage or computation of back wages, that are actually in dispute.") (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

The requirement of a bona fide dispute is satisfied here. Himagine disputes several of Plaintiffs' key allegations, including that Himagine had a companywide policy and practice of failing to accurately track or record actual hours worked by its Coders; that Himagine failed to pay Plaintiff and the Collective Action Members all compensation due and owing to them for hours they worked in excess of 40 in a work week; that Himagine's conduct was willful (such that a three-year rather than a two-year limitations period applies and liquidated damages are recoverable); and that this action could properly be brought as a collective action. In addition, the record reflects that the parties have engaged in extensive activities both before and after this

lawsuit was filed in an effort to resolve these disputes, including extensive discovery and two day-long mediation conferences. There was clearly a bona fide dispute here.

The Court next considers whether the settlement is fair and equitable to all parties. "To determine whether settlement terms are fair and equitable to all parties, a district court may consider a multitude of factors, including (1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the plaintiff's success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." *Stainbrook v. Minnesota Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017) (cited with approval in *Melgar*, 902 F.3d at 779). *See also King*, 2015 WL 631253, at *2. The Court must also be "mindful of the strong presumption in favor of finding a settlement fair." *King*, 2015 WL 631253, at *2 (internal quotation marks omitted).

After analyzing the above factors in this case, the Court finds that the settlement is fair and equitable to all parties and should be approved. The first factor—the stage of the litigation and the amount of discovery exchanged—weighs in favor of approval in this case. Plaintiffs state that Plaintiff's counsel began investigating the issues in this lawsuit in July 2019; that the parties exchanged documents and engaged in a mediation conference before the lawsuit was filed; that since the lawsuit was filed in April 2020, the parties have conducted substantial discovery, including exchanging thousands of pages of discovery on conditional certification issues and merits issues and conducting two depositions; and that Himagine has provided Plaintiffs with detailed data on which to prepare a damages model. The amount of information exchanged suggests that the parties have had a substantial opportunity to analyze liability, determine potential damages, and assess the risks associated with the claims alleged.

The second factor—the experience of counsel—also favors approval. Plaintiffs have presented evidence of the extensive experience of Plaintiffs' counsel in representing workers in wage and hour matters and in complex class and collective wage and hour actions. Defendant's counsel is also experienced in handling class and collective action wage and hour litigation on behalf of employers nationwide. This high level of experience weighs in favor approving the settlement.

The third factor—the probability of Plaintiffs' success on the merits—is somewhat difficult for the Court to evaluate on the current record but appears to weigh in favor of approval. Plaintiffs state that they remains steadfast about the validity and merits of the claims alleged, but they acknowledge certain risks regarding whether Plaintiffs would ultimately prevail, including risks related to certification of the class action (because Himagine would have focused on differences between the Coders, who had different schedules, worked for different Himagine clients, were subject to different customer contracts, and had different managers) and risks related to whether Plaintiff would have prevailed on the merits at trial (because Himagine would have asserted various defenses, including that Coders were responsible for reporting their own time; that the company maintained and enforced a policy requiring Coders to report and verify all time worked; that the testimony of Plaintiffs was not representative of the experience of other Collective Members, and that Himagine paid Coders in good faith, thereby precluding recovery of liquidated damages and limiting liability to two years of claims rather than three). It appears to the Court that the $965,000 settlement award, which will represent payment of approximately $22.25 per 40-hour-or-more week per Coder, represents a fair and reasonable resolution of the claims in light of the risks of a lower recovery or even no recovery.

As to the fourth factor, the Court finds no reason to believe there was any overreaching by the employer in the settlement negotiations, particularly in light of the experience of Plaintiffs' counsel in this area. Additionally, the fact that the parties reached this settlement after a mediation conference with an experienced wage and hour mediator suggests an absence of overreach. With regard to the fifth factor, as discussed above, the settlement is the product of arm's length negotiations between represented parties based on the merits of the case. Thus, these factors also weigh in favor of approval.

For all of the above reasons and keeping in mind the strong presumption in favor of finding settlement agreements fair, the Court finds that the settlement is fair and equitable to all parties.

### C. The Proposed Class Representative and Service Payments

The Court next considers the reasonableness of the proposed Class Representative Payment and Service Payments. "[R]elevant factors in deciding whether incentive award to named plaintiff is warranted include actions plaintiff took to protect class's interests, degree to which class has benefitted from those actions, and amount of time and effort plaintiff expended in pursuing litigation." *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Plaintiffs propose several payment. First, they propose a $5,000 class representative payment to the named plaintiff, who worked with counsel during the initial case investigation phase, pre-suit mediation, and the original complaint; assisted with Rule 26 disclosures and responses to written discovery; was available during mediation and routinely communicated with counsel; and took on a reputational risk by attaching her name to litigation against her employer. Second, Plaintiffs propose a service payment of $2,500 to the opt-in plaintiff who participated in the exchange of written discovery, prepared for and appeared at a deposition, assisted in

preparation for mediation, and took a risk by opting in prior to certification and actively participating in litigation against a former employer. Third, Plaintiffs propose $500 service payments to the remaining six opt-ins, who participated in the exchange of written discovery and provided information to counsel in the course of preparing for depositions.

The Court finds these payments reasonable and appropriate in light of these representatives' participation in the litigation and the benefit that the other Collective Members received from their participation. The Court also notes that these payments are in line with other service payments approved by courts within the Eighth Circuit. *See, e.g.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867-68 (8th Cir. 2017) (approving $10,000 service awards to named plaintiffs and noting that "courts in this circuit regularly grant service awards of $10,000 or greater."); *Johnson*, 2019 WL 1254565, at *6 (approving $5,000 service awards to each of the named plaintiffs in an FLSA action); *Simmons v. Enterprise Holdings, Inc.*, No. 4:10-CV-00625-AGF, 2012 WL 2885919, at *2 (E.D. Mo. July 13, 2012) (approving $6,000 individual incentive awards to named plaintiffs in FLSA action).

### D. The Parties' Proposed Notice and Plan for Distribution and Settlement Administration

The Court finds the parties' proposed notice and plan for distribution and settlement administration to be fair and reasonable. The form of the notice is clear and advises Collective Members of the terms of the settlement, including an estimated amount of their individual settlement share. It clearly sets forth Collective Members' options for participating in or not participating in the settlement and how to exercise those options. It also provides instructions on how to update contact information or dispute the calculation of their settlement share. The Court also finds that the time periods and other procedures set forth in the settlement agreement for its administration are fair and reasonable.

### E. Attorney's Fees and Expenses

The Court next considers Plaintiffs' counsel's request that the Court approve the parties' agreement that Plaintiffs' counsel will receive $321,666.67 in attorney's fees (one third of the settlement's common fund), plus reimbursement of stipulated litigation costs of $17,220.00.[3] The FLSA includes a fee-shifting provision. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The Court reviews the proposed fee award to determine whether it is fair and reasonable. *See Melgar*, 902 F.3d at 779; *Del Toro*, 2021 WL 1784368, at *2. "[W]here the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Melgar*, 902 F.3d at 779. The court's review "requires a certain level of deference by the district court to the parties' settlement agreement" and "is more deferential than resolving attorneys' fees in a disputed case."

---

[3] In *Barbee v. Big River Steel, LLC*, a case where the parties negotiated a reasonable attorney fee amount in their settlement "separately and without regard to the plaintiff's FLSA claim," the Eighth Circuit held that "judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees." 927 F.3d 1024, 1027 (8th Cir. 2019). However, since *Barbee*, judges in this district have found that *Barbee* does not apply in cases where, as here, the attorney's fees were calculated as a percentage of settlement funds rather than negotiated separately. *See Sandoval-Osegura v. Harvey Pallets Mgmt. Group, LLC*, No. 4:19-CV-00096-AGF, 2021 WL 2337614, at *2 (E.D. Mo. June 8, 2021) (reviewing fees in FLSA collective action settlement for reasonableness; stating, "The attorney fees in this case were calculated as part of the settlement fund. As such, Eighth Circuit precedent limiting the Court's authority to approve or reduce the award does not apply.") (citing *Del Toro, et al., v. Centene Mgmt. Co., LLC*, No. 4:19-CV-02635-JAR, 2021 WL 1784368, at *2 (E.D. Mo. May 5, 2021), and *Barbee*, 927 F.3d at 1027); *Del Toro*, 2021 WL 1784368, at *2 (noting its finding that *Barbee* did not apply to an FLSA settlement because, *inter alia*, the "the proposed attorneys' fees are calculated as a percent of settlement funds" and are therefore "necessarily intertwined with the [P]laintiffs' settlement") (internal quotation marks omitted).

Here, similarly, because the fees were calculated as a percentage of the settlement fund and not separately, the Court will take the same approach and will review the parties' agreed-upon attorneys' fees for reasonableness.

*Id.* at 779-80. *See also Johnson*, 2019 WL 1254565, at *6 (expressing skepticism about the reasonableness of the attorneys' hourly rates but approving the agreed-upon fees in an FLSA settlement; noting that "the Eighth Circuit has admonished district courts to afford 'a certain level of deference' when reviewing the amount of attorney's fees that the defendant agrees to pay in settling a FLSA collective action") (quoting *Melgar*, 902 F.3d at 779). In assessing the reasonableness of a proposed fee award, the Court may consider factors including (1) whether the fee is fixed or contingent; (2) the amount involved and the results obtained; (3) the novelty and difficulty of the questions; (4) the experience, reputation and ability of the attorneys; and (5) awards in similar cases. *See Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017) (citation omitted).

Here, the parties have used a "percentage of the benefit" award to calculate the attorney's fees in this case: Plaintiffs' counsel seeks one-third of the total settlement fund, for a fee award of $321,666.67.[4] The Court finds the agreed-upon fees to be reasonable. First, the Court notes that the percentage of the settlement award sought is within the range that has been found reasonable in other FLSA settlements in this circuit. *See, e.g., Meller v. Bank of the West*, No. 3:18-CV-00033-JAJ-SBJ, 2018 WL 5305562, at *9 (S.D. Iowa Sept. 10, 2018) (recommending approval of award of one-third of the maximum settlement amount, plus expenses; noting that "[a]n award of 33 1/3% of the maximum settlement amount is in line with other awards in the Eighth Circuit), *report and*

---

[4] The Eighth Circuit has explained two main approaches courts use to analyzing attorney's fee requests as follows:
> Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action. Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation.

*Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244-45 (8th Cir. 1996)) (internal quotation marks and citations omitted).

*recommendation adopted*, 2018 WL 5305556 (S.D. Iowa Oct. 1, 2018); *Del Toro*, 2021 WL 1784368, at *3 (approving fees of 35% of the gross settlement fund in an FLSA collective action settlement; noting that "a 35% fee is within the range routinely approved by courts in the Eighth Circuit"). *See also Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) (approving fees of 33% of the total settlement fund in a class action; noting that "courts have frequently awarded attorneys' fees ranging up to 36% in class actions").

The other relevant factors also generally weigh in favor of approval. Plaintiffs' counsel took this case on a contingency basis, with no guarantee of success and significant risk of no recovery. The settlement amount is substantial. Plaintiffs' counsel has also demonstrated their expertise and experience in class action litigation, including FLSA litigation specifically. The case appears to involve complex factual issues, and Plaintiffs' counsel has provided evidence that counsel engaged in extensive investigation, legal research and analysis of difficult legal questions and theories; engaged in substantial discovery; and engaged in lengthy settlement negotiations over the course of this case, including two mediations.

Finally, the Court has cross-checked the award sought against the lodestar method, and that analysis supports a finding that the award sought is reasonable. Where the percentage of the benefit approach is used, district courts often verify the reasonableness of the award "by crosschecking it against the lodestar method" *Huyer*, 849 F.3d at 399 (citing *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1061 (D. Minn. 2010)); *see also Del Toro*, 2021 WL 1784368, at *3. Although Plaintiffs' counsel has not submitted billing records, they have offered evidence that attorney Greg Shavitz of the Shavitz Law Group ("SLG") spent 139.8 hours on this case at a rate of $700 per hour; that Alan J. Quiles of SLG spent 381.4 hours on this case at a rate of 650 per hour; that SLG paralegals spent 65.7 hours at a rate of $150 per hour, and that Stueve Siegel

Hanson LLP attorneys have contributed 36.4 hours at $648 per hour. Together, the amount calculated using this lodestar method is $379,213.00—an amount that exceeds the $321,666.67 sought, resulting in a "negative multiplier" of 0.85. As Plaintiffs note, courts within the Eighth Circuit have approved lodestar multipliers of well over one. *See Huye*r, 849 F.3d at 399 (approving award representing a lodestar multiplier of 1.82); *Keil*, 862 F.3d at 701-03 (approving award representing a lodestar multiplier of 2.7); *Del Toro*, 2021 WL 1784368, at *3 (approving award representing a lodestar multiplier of 2.73). Even if the Court has concerns that the hourly rates charged appear somewhat high in this case, this low multiplier confirms that the fees sought are well within the reasonable range.

Finally, the Court also finds the $17,220.00 in stipulated litigation costs to be reasonable. The parties have provided a list of the specific expenses sought, which appear reasonable, particularly relative to the amount of the settlement.

### III. CONCLUSION

For all of the above reasons, the Court finds that this case should be certified as an FLSA collective action for settlement purposes and that the terms of the settlement should be approved. Accordingly,

**IT IS FURTHER ORDERED** that Plaintiffs' Unopposed Motion to Approve Settlement of FLSA Collective Action. (Doc. 39) is **GRANTED**.

**IT IS HEREBY ORDERED** that, for settlement purposes only, the Court certifies this case as an FLSA collective action.

**IT IS FURTHER ORDERED** that the Settlement Agreement is hereby **APPROVED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**, with prejudice, in accordance with the terms of the Settlement Agreement.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of June, 2021.